# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Zip Designs, LLC     *

v.     *     Civil No. CCB-17-1327

Glowzone Las Vegas, LLC     *

## MEMORANDUM

This dispute arises from a contract between Zip Designs, LLC ("Zip Designs") and Glowzone Las Vegas, LLC ("Glowzone") for the construction of three elements—a Ninja Warrior Course, a Pole Walk, and a Drop Slide—at Glowzone's Las Vegas recreational facility. Currently pending before the court are Glowzone's motion for summary judgment and Zip Designs' cross-motion for summary judgment. For the reasons outlined below, the court will grant in part and deny in part Glowzone's motion and grant in part and deny in part Zip Designs' motion. The issues have been briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018).

## BACKGROUND

Glowzone operates an entertainment facility in Las Vegas that provides customers with "adventure and recreation based entertainment services and products." (Counterclaim ¶ 1, ECF No. 4).[1] Zip Designs designs, manufactures, and installs "adventure and recreational products." (Am. Compl. ¶ 6, ECF No. 25). On July 6, 2016, the parties entered into a Construction Contract

---

[1] The counterclaim was initially filed by Glowzone, Glowzone International, LLC, and Samantha Hickman. (*Id.*). The parties subsequently stipulated to the dismissal of Glowzone International, LLC and Samantha Hickman. (*See* ECF No. 26; ECF No. 44). Glowzone, however, out of an abundance of caution, explicitly re-adopted the counterclaim. (*See* ECF No. 42).

for three elements: a Ninja Warrior Course, a Pole Walk, and a Drop Slide. (Def.'s Mot. Summ. J. Ex 1 ["Construction Contract"], ECF No. 52-3).[2] Glowzone agreed to pay $150,649.00 for the manufacturing and shipping of the three elements. (*Id.*) The parties estimated that labor for installation would cost an additional $13,450.00. (*Id.*). The total amount due was to be paid according to a payment schedule set out in the Construction Contract. (*Id.* at 1). On September 8, 2016, the parties modified the payment schedule so that all but $49,229.70 would be paid prior to the installation of the elements, and the remaining $49,229.70 would be divided into three installments of $16,409.90, to be paid on the 30th, 60th, and 90th day after "installation completion." (Pl.'s Mot. Summ. J. Ex 7a–7b ["Modification"] at 24, ECF No. 53-4).

This dispute centers around the Drop Slide, an "approximately thirty-five foot tall curved slide affixed with an overhead winch located behind the slide." (Mem. P. & A. Supp. Def.'s Mot. Summ. J. ["Def.'s's Mot"] at 1, ECF No. 52-1). To use the slide, Glowzone patrons lie at the bottom of the slide and grasp a metal bar that is attached to the winch by a winching cable. (*Id.* at 1–2). The winch then becomes engaged and lifts the winching cable upwards towards the top of the slide, pulling the customer along with it. (*Id.*). Once they reach the top of the slide, customers release the metal bar and slide down. (*Id.*).

On January 26, 2017, six days after the Drop Slide was put into service, the winch motor and assembly failed. (*Id.*; Mem. P. & A. Supp. Pl.'s Mot. Summ J. ["Pl.'s Mot."] at 12, ECF No. 53-1). All of the motor bolts in the winch were sheared off and the winching cable went slack. (Def.'s Mot. at 2). The Drop Slide has remained out of service since this time. (*Id.*). Around February 1, 2017, Zip Designs hired Reliable Pump Inc. ("Reliable") to inspect and repair the winch. (*Id.*). On February 3, 2017, Reliable informed Zip Designs that the winch failed because of

---

[2] The Construction Contract refers to the Pole Walk and the Drop Slide as "two PayClimb Elements." (*Id.* at 1).

excessive torque. (*Id.*). Reliable also told Zip Designs that it had contacted Thern, Inc. ("Thern") the manufacturer of the winch, and Thern told Reliable that they should not repair the winch because it was being misused. (*Id.*). Specifically, Thern noted that the winch "was being used for an application unsuitable for the motor." (*Id.*). And Reliable also noted that a warning sticker on the winch indicated that it should not be used to "lift people, or things over people." (*Id.*). Thern's manual for the winch also warns against using the winch to "lift people, or things over people." (Def.'s Mot Ex. 7 ["Thern Winch Manual"] at 3, ECF No. 52-9).

Because Zip Designs' warranty covered the winch motor and assembly, Zip Designs offered to: (1) repair the defective winch; or (2) replace the motor with a comparable motor and replace the defective winch with a similar winch; or (3) replace the defective winch with a winch rated for human life support at Glowzone's expense. (Pl.'s Mot. at 12–13; Hornick Decl. I ¶ 18, ECF No. 53-3 at 5; Whited Dep. 285:15–21; 300:10–15, ECF No. 53-2 at 43–44). Glowzone rejected all three of these options. (Whited Dep. 299:9–301:8). The parties do not dispute that the winch failed because of a manufacturing defect. (Hornick Dep. 160:4–10, ECF No. 52-4; Deibel Dep. 92:10–16, ECF No. 52-8). Instead, this dispute turns on whether, even absent a manufacturing defect, the winch provided by Zip Designs was not suitable for use in the Drop Slide.

On May 15, 2017, Zip Designs removed its suit against Glowzone from the Circuit Court for Baltimore County to this court. (ECF No. 2). On November 27, 2017, Zip Designs filed an amended complaint, alleging: breach of contract (Count I); unjust enrichment (Count II); and quantum meruit claims. (ECF No. 25). On May 15, 2017, Glowzone filed a counterclaim alleging: breach of contract (Count I); unjust enrichment (Count II); design defect (Count III); fraudulent misrepresentation (Count IV); fraudulent concealment (Count V); negligent misrepresentation (Count VI); breach of express warranty (Count VII); and breach of implied warranties (Count

3

VIII). (ECF No: 4).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48.

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## ANALYSIS

### A. Glowzone's Motion for Summary Judgment

Glowzone has moved for summary judgment as to its breach of contract, breach of express warranty, and breach of the implied warranty of merchantability and the implied warranty of fitness for particular use counterclaims. (Def.'s Mot. at 8–17). The parties do not dispute that, as specified in the Construction Contract, Maryland law governs this case. (Construction Contract at 4).

#### 1. Breach of contract and breach of express warranty

Glowzone's breach of contract and breach of express warranty claims arise out of three representations by Zip Designs in the Construction Contract: (1) that "performance of the Work would be of good quality, free from faults and defects"; (2) that Zip Designs would "supervise and direct the Work, using its best skill and attention" and take sole responsibility for all "construction means, methods, techniques, sequences and procedures"; and (3) that if "within two (2) years from the date of completion of the Work, any of the Work is found to be defective, [Zip Designs] shall correct it promptly." (Construction Contract at 1–2). The dividing line between a contractual obligation and an express warranty is fine. But, generally, a promise "to do an act in the future is a contractual obligation," while "a statement . . . that assures the quality, description, or performance of the property constitutes an express warranty." *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. Partnership*, 109 Md.App. 217, 246 (1996) (citing *Antigua Condominium Assocs. v. Melba Investors Atlantic, Inc.*, 307 Md. 700, 715 (1986)); *see also McCarty v. E.J. Korvette, Inc.*, 28 Md.App. 421, 427 (1975).

Here, the first two representations assure Glowzone of the quality of the three elements and

5

the level of skill and care that Zip Designs will employ in their construction. The final representation is a promise to make repairs in the future. Accordingly, the court will construe the first two representations as express warranties, and the final representation as a contractual obligation. The Court notes, however, that whether these provisions are characterized as a warranty or a contractual obligation, there is a dispute of material fact about whether the winch supplied by Zip Designs is suitable for use in the Drop Slide.

### a. Breach of contract

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). "Construction of a contract is, in the first instance, a question of law for the court to resolve." *Shapiro v. Massengill*, 105 Md.App. 743, 754 (Md. Ct. Spec. App. 1995) (citing *Suburban Hosp. v. Dwiggins*, 324 Md. 294, 306 (1991)). Maryland follows the objective law of contracts. *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985). Consequently, where the language of the contract is "plain and unambiguous," the Court "must presume that the parties meant what they expressed." *See id.* A contract is ambiguous if, "when read by a reasonably prudent person," it is susceptible to more than one meaning. *Calomiris v. Woods*, 353 Md. 425, 436 (1999) (first citing *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md 584, 596 (1990); then citing *Truck Ins. Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 433 (1980)).

Glowzone argues that Zip Designs breached its contractual obligation to promptly correct its defective work by failing to repair the defective winch. (Def.'s Mot. at 9). Glowzone also asserts that notwithstanding the manufacturing defect in the winch, Zip Designs breached the contract by supplying a winch that was not suitable for use in the Drop Slide. (*Id.* at 9–13). Finally, Glowzone

6

contends that Zip Designs breached the implied covenant of good faith and fair dealing. This was not a numbered count in the counterclaim, and Glowzone acknowledges that "[n]o independent cause of action in Maryland exists for a breach of the implied covevnant of good faith and fair dealing." (Def.'s Mot. at 13 (citing *Mount Vernon Properties, LLC v. Branch Banking & Tr. Co.*, 170 Md.App. 457, 471–72 (2006)); *see also Gurbani v. Johns Hopkins Health Systems Corp.*, 237 Md.App. 261, 306 n.20 (citing *Mount Vernon*, 170 Md.App. at 471)). But Glowzone argues that Zip Designs' alleged bad faith in using a winch that it knew was unsuitable for the Drop Slide should color the court's consideration of its breach of contract claim. (Def.'s Mot. at 14). The court will consider these arguments in turn.

Zip Designs offered to repair the winch in three different ways: (1) repair the defective winch; or (2) replace the motor with a comparable motor and replace the defective winch with a similar winch; or (3) replace the defective winch with a winch rated for human life support, at Glowzone's expense. (Pl.'s Mot. at 12–13; Hornick Decl. I ¶ 18, ECF No. 53-3 at 5; Whited Dep. 285:15–21; 300:10–15, ECF No. 53-2 at 43–44). Glowzone rejected all three of these options because it believed that the only suitable remedy was for Zip Designs to replace the winch with a winch rated for human life support at its own expense. (Whited Dep. 299:9–301:8). In order for the court to determine whether Zip Designs breached its contractual obligation in refusing to take this step, the court must determine whether the winch was, in fact, unsuitable for the Drop Slide. If the winch was appropriate for the intended design, any request by Glowzone to use a different winch would expand rather than enforce the contract terms.

Glowzone argues that the winch is not suitable for lifting humans, as evidenced by warnings on the winch itself, and in Thern's Winch Manual. (Def.'s Mot. Ex 8 ["Warning Sticker Photograph"], ECF No. 52-10; Thern Winch Manual at 3). In fact, Thern was so concerned about

7

the use of the winch with the Drop Slide's motor that they told Reliable not to make any repairs to the winch. (Def.'s Mot. at 2).

Zip Designs counters that this type of winch is commonly used in Drop Slides. (Pl.'s Mot. at 6). Zip Designs notes that one of Glowzone's expert witnesses explicitly noted that the warning on the winch at issue is "not uncommon" and "designers/manufacturers will use a custom design that accommodates for the use of other components that are suitable for human life." (Pl.'s Resp. Opp'n Def.'s Mot. ["Pl.'s Resp."] Ex A, ECF No. 55-1). Zip Designs also argues that an engineer from the Clark County Building Department inspected and approved the Drop Slide, and that Zip Designs' internal risk analyses indicated the Drop Slide design was safe. (Pl.'s Resp. at 9; Hornick Decl. II ¶¶ 5, 8, ECF No. 55-4).

Zip Designs also takes issue with Glowzone's contention that the Drop Slide is "lifting" humans. Zip Designs contends that while customers are dragged up the slide, they maintain constant contact with the slide. (Pl.'s Mot. at 12; Hornick Decl. I ¶ 14–15). And Zip Designs' Chief Executive Officer, Scott Hornick, testified that when he spoke to Thern and explained that customers would be dragged up the slide rather than lifted above the slide, Thern was less concerned about the use of the winch. (Hornick Decl. II ¶ 15, ECF No. 55-4).

A genuine dispute of material fact exists regarding the suitability of the winch for use in the Drop Slide. The jury is the appropriate arbiter of this dispute. Because all of Glowzone's breach of contract arguments are premised on the factual conclusion that the winch was not appropriate for use in the Drop Slide, the court will not decide these claims at this stage of the litigation. Accordingly, the court will deny Glowzone's motion for summary judgment as to breach of contract.

    **b.**     **Breach of express warranty**

An express warranty is established by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain." Md. Code. Ann., Com. Law. § 2-313(1). To prevail on a claim of breach of express warranty under Maryland law, "a plaintiff is required to establish that 1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *SpinCycle, Inc. v. Kalender*, 186 F.Supp.2d 585, 589 (D. Md. 2002) (citing *Fischbach & Moore Int'l Corp. v. Crane Barge R-14*, 632 F.2d 1123, 1125 (4th Cir. 1980)).

Glowzone argues that Zip Designs breached the express warranty that the Drop Slide would be of "good quality" and "free from faults and defects." This guarantee was an explicit part of the contract and, therefore, established an express warranty. *See McCarty*, 28 Md.App. at 427 (holding that an express warranty was created by representations on an invoice for the sale of tires that guaranteed the quality of the tires for 36,000 miles). Glowzone argues that this warranty was breached, first because of the manufacturing defect in the winch, and second because the winch itself, regardless of any manufacturing defect, was unsuitable for use in the Drop Slide.

Zip Designs admitted that the winch contained a manufacturing defect. (Hornick Dep. 160:4–10, ECF No. 52-4; Deibel Dep. 92:10–16, ECF No. 52-8). Zip Designs, therefore, breached its warranty. Accordingly, the court will grant Glowzone's motion for summary judgment as to this claim of breach of express warranty. Because a dispute of material fact exists as to the suitability of the winch for use in the Drop Slide, however, the court will deny Glowzone's motion for summary judgment as to its second argument for breach of express warranty.[3]

---

[3] Glowzone also argues that Zip Designs breached its obligation under the Construction Contract to "supervise and direct the Work, using its best skill and attention." (Construction Contract at 2). Based on the court's preceding discussion, this provision of the contract is best characterized as an express warranty rather than a contractual obligation. But this is a distinction without a difference, because the

9

### 3. Breach of the implied warranty of merchantability and fitness for particular use

To establish breach of the implied warranty of merchantability, a plaintiff must demonstrate that: "(1) a warranty existed; (2) the product did not conform to the warranty [and thus the warranty was breached]; and (3) the breach of warranty by the seller was the cause of the injury to the user or third party." *Lloyd v. General Motors Corp.*, 397 Md. 108, 157–58 (2007) (first citing *Mattos v. Hash*, 279 Md. 371, 379 (1977); and then citing *Ford Motor Co v. General Accident Ins. Co.*, 365 Md. 321, 335 (2001)). Maryland Code § 2-314 of the Commercial Law Article specifies that a warranty of merchantability is implied if "the seller is a merchant with respect to the goods of that kind," and for "[g]oods to be merchantable [they] must be at least as as . . . [a]re fit for the ordinary purposes for which such goods are used." ULA UCC § 2-314 (West 2018). The plaintiff must "prove the existence of a defect at the time the product leaves the manufacturer." *Ford Motor Co.*, 365 Md. at 334. Generally, a manufacturing defect, design defect, or a failure by the manufacturer to provide the buyer with "proper instructions with respect to the goods" will suffice to establish a defect. *Pulte Home Corp. v. Parex, Inc.*, 174 Md.App. 681, 750 (2007).

A breach of the warranty of fitness for particular purpose occurs where:

> the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

ULA UCC § 2-315 (West 2018); *see Lloyd*, 397 Md. at 158 n.23.

Glowzone argues that Zip Designs violated both the implied warranty of merchantability

---

factual dispute regarding the suitability of the winch for use in the Drop Slide precludes the court from concluding whether Zip Designs breached its warranty of "best skill and attention."

10

and the implied warranty of fitness for particular use by supplying a winch that was not suitable for use in the Drop Slide. *Cf. Shreve v. Sears, Roebuck & Co.*, 166 F.Supp.2d 378, 418 (D. Md. 2001) (holding that because a snow thrower did not work "properly and safely" as a consumer expected, an implied warranty of merchantability cause of action may exist). As detailed above, a genuine dispute of material fact exists regarding the winch's suitability for use in the Drop Slide. Accordingly, the court will deny Glowzone's breach of implied warranties claims.

### B. Zip Designs' Cross-Motion for Summary Judgment

Zip Designs moves for summary judgment as to its breach of contract claim, and as to Glowzone's fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation claims. (Pl.'s Mot at 16). Zip Designs also asks the court to find that: (1) Glowzone repudiated the Construction Contract; (2) the warranties in the Construction Contract only require Zip Designs to repair or replace the winch motor; and (3) Glowzone cannot prove damages with the sufficiency required by Maryland law, and cannot establish loss of income or lost profits as a result of the failed winch. (*Id.* at 16–17).

#### 1. Breach of contract

The parties do not dispute the validity of either the Construction Contract or the subsequent Modification. Instead, Zip Designs' pleadings focus on one core allegation: Glowzone breached the Contract by failing to abide by the payment schedule set forth in the Modification. Specifically, Zip Designs argues that installation of the Ninja Warrior Course, Pole Walk, and Drop Slide was complete as of October 21, 2016. (*See* Lamont Aff. at 19–20, ECF No. 53-3). Accordingly, Glowzone was obliged to make its final three payments of approximately $16,000.00 on the 30th, 60th, and 90th days after October 21, 2016. And Glowzone does not dispute that it did not make these payments.

11

Under the Modification, Glowzone is obliged to make its final three payments on the 30th, 60th, and 90th day "after installation completion." (Modification). There is no indication in the Modification, or in the Construction Contract, that this obligation takes effect after the installation of a single element. Instead, the Construction Contract defines the "Work" to be completed as the installation of all three elements: the Ninja Warrior Course; the Pole Walk; and the Drop Slide. (Modification; Construction Contract at 1). Further, under the explicit terms of the Construction Contract, the work is complete only after Glowzone inspects the work and signs a "Final Walk Through," also referred to as an "Installation Agreement," certifying that the work was satisfactorily completed. (Construction Contract at 2). Glowzone signed an Installation Agreement that referred solely to the Ninja Warrior Course. (Pl.'s Mot. Ex 7c-7f at 7–9, ECF No. 53-5). It never signed an Installation Agreement for the Pole Walk or the Drop Slide.

Glowzone also has submitted evidence that work on the Pole Walk was not complete until January 2017. (ECF No. 53-3). Specifically, Glowzone was unsatisfied with the condition of the Pole Walk when it arrived at the Glowzone facility because of "large scuffing" on the poles. (Hickman Dep. 67:13–15). Under the terms of the Contract, if work is not satisfactory, Zip Designs must correct the deficiencies. (Construction Contract at 2). It was not until January 9, 2017, that Glowzone agreed to accept the Pole Walk "as is" in exchange for modifications to a separate payment plan at Glowzone's Huntington Beach facility. (Pl.'s Mot. Ex 7a-7b at 25, ECF No. 53-4). Based on the Construction Contract's definition of work completion, and the dispute over the Pole Walk, a reasonable juror could conclude that installation was not complete until at least January 2017.

Glowzone has also maintained that installation of the Drop Slide was not complete until January 2017 when Glowzone received all the necessary permits for the Drop Slide. (Def.'s Resp.

at 2–3). But under the Construction Contract, Glowzone was solely responsible for obtaining necessary permits. (Construction Contract at 2). And obtaining permits is not directly related to the "installation" of the three elements. Regardless, the court's conclusion remains the same because the dispute over the Pole Walk extended through January 9, 2017.

Finally, Zip Designs notes that Glowzone alleged in its counterclaim that "Zip Designs' installation of the Work was complete in October of 2016." (Counterclaim ¶ 15). In passing on a motion for summary judgment, the court must look to evidence presented by the parties rather than the bare pleadings. A reasonable juror could conclude, based on the evidence presented, that Glowzone's obligation to make payments was not triggered until all three elements were installed—which did not occur until January 2017. Zip Designs has not carried its burden of establishing that installation was complete as of October 21, 2016. Accordingly, the court will deny Zip Designs' motion for summary judgment as to breach of contract.

### 2. Fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation

To establish fraudulent concealment, a party must demonstrate that:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138 (2007) (internal citations omitted). To establish fraudulent misrepresentation, a party must demonstrate that:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

13

*Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994). Finally, to establish negligent misrepresentation, a party must establish that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd*, 397 Md. at 135–36. Glowzone's claims of fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation are each premised on the factual conclusion that Zip Designs knew or should have known that the winch was unsuitable for use in the Drop Slide and used it anyway. Because there is a genuine dispute of material fact as to the suitability of the winch, the court will deny Zip Designs' motion for summary judgment as to negligent misrepresentation. But because Glowzone has not presented any evidence that suggests Zip Designs intended to defraud Glowzone, the court will grant Zip Designs' motion for summary judgment as to fraudulent concealment and fraudulent misrepresentation.

### 3. Miscellaneous claims

First, Zip Designs asks the court to find that the express warranty in the contract obliging Zip Designs to "correct" defective work only obliges Zip Designs to repair the winch or replace it with the same or a similar type of winch. (Pl.'s Mot. at 23-25). As discussed above, the court will not reach this question at this stage in the litigation. A genuine dispute of material fact exists regarding the appropriateness of using the winch in the Drop Slide. A jury must resolve this dispute in order to determine whether Zip Designs fulfilled its obligation of correcting the defective work.

Second, Zip Designs asks the court to find that Glowzone repudiated the Construction Contract when it refused Zip Designs' offer to either repair the winch, replace it with a similar winch, or replace it with a winch rated for human life support at Glowzone's expense. (*Id.* at 25–

14

26). This too cannot be resolved at this stage of the litigation. If Zip Designs' first two suggested remedies would not resolve the defect in the Drop Slide design, Glowzone was under no obligation to accept them, or to assume the cost of a different winch.

Third, Zip Designs asks the court to hold that it is entitled to interest as a matter of law. Under the terms of the Construction Contract, "[a] monthly interest rate of 1.5 percent will be added to all past due invoices." (*Id.* at 26). As discussed above, Zip Designs has not established that Glowzone's obligation to make its final three payments took effect on October 21, 2016. And if a reasonable trier of fact concludes that this obligation did not begin until January 2017, the subsequent failure of the Drop Slide and ensuing dispute over the appropriate way to repair the winch may excuse Glowzone's subsequent non-payment. *See Publish Am., LLP v. Stern*, 216 Md.App. 82, 101 n.19 (2014) (quoting *Hubler Rentals, Inc. v. Roadway Exp., Inc.*, 637 F.2d 257, 260–61 (4th Cir. 1981) ("[U]nder Maryland law, a party suing on the contract must first prove his own performance, or an excuse for nonperformance, in order to recover for any breach by the opposing party.")); *see also Laurel Race Course, Inc. v. Regal Const. Co.*, 274 Md. 142, 154 (1975) ("It is fundamental that where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused."). Accordingly, the court will not resolve this issue at this time.

Fourth, Zip Designs asks the court to find that Glowzone cannot prove damages for lost profit or lost income, and that the remainder of Glowzone's damages are speculative. "Under Maryland law, the plaintiff has the burden of proving the fact of and the extent of the damages he has sustained. Those damages must be proved with reasonable certainty, and may not be based on speculation or conjecture." *Kirby v. Chrysler Corp.*, 554 F.Supp. 743, 752 (D. Md. 1982) (first

15

citing *Lazorcak v. Feuerstein*, 273 Md. 69 (1974); and then citing *Charles Cty. Broadcasting Company, Inc. v. Meares*, 270 Md. 321 (1973)). But "mathematical precision" is not required. *David Sloane, Inc. v. Stanley G. House & Assocs., Inc.*, 311 Md. 36, 41 (1987) (quoting *M & R Contractors & Builders, Inc. v. Michael*, 215 Md. 340, 349 (1958)). And specific proof of actual damages is not required for breach of contract claims because nominal damages may always be awarded. *Cottman v. Maryland, Dep't of Natural Res.*, 51 Md.App. 380, 384 (1982) ("It is well settled that every injury to the rights of another imports damage, and if no other damage is established, the party injured is at least entitled to a verdict for nominal damages.") (internal quotation marks and citations omitted). Accordingly, Glowzone's breach of contract claim survives summary judgment.

Further, there is evidence that Glowzone suffered damages related to the winch. Glowzone has claimed the following damages: $50,000 in customer dissatisfaction; $256,926.42 in lost revenue; $2,350.00 in QAA/Inspection service costs; $3,000.00 in welding service costs; $130.26 in costs for protective suits; $3,550.00 in electrical services costs; and $3,250.00 in training costs. (Def.'s Resp. at 15–16). Zip Designs argues that these damages are inflated. (Pl.'s Mot. at 26–27). But Hickman provided testimony that indicates Glowzone expended at least some money related to protective suits, training, electrical work, and welding for the Drop Slide. (Hickman Dep. 197–208; 212:17–213:16).[4] Accordingly, the court will deny Zip Designs' motion for summary

---

[4] The court does, however, note significant issues with the adequacy of proof of Glowzone's asserted customer dissatisfaction and lost revenue damages. Glowzone has provided no evidence to substantiate the damages it alleges due to customer dissatisfaction. It has not demonstrated, for example, that customers complained about the Drop Slide, or that customers received discounts because the Drop Slide was out of service. Instead, Glowzone bases this figure on "experience, calculations, observations, and testimony of Glowzone and its personnel." (*Id.* at 16). To calculate lost revenue damages, Glowzone divided the price of a customer pass, $35.00, by nine, to determine an approximate value of $3.84 for each of the nine elements at its facility. Glowzone then multiplied $3.84 by 107,712—the approximate number of guests who frequent Glowzone annually—which totaled to $418,999.69. This figure was then multiplied by .61 because it was expected that approximately 61% of customers would use the Drop Slide. But, again,

judgment as to damages.

## CONCLUSION

For the reasons stated above, Glowzone's Motion for Summary Judgment will be granted in part and denied in part and Zip Designs' Motion for Summary Judgment will be granted in part and denied in part. A separate order follows.

_3/27/19_
Date

_CCB_
Catherine C. Blake
United States District Judge

---

Glowzone has not provided any evidence that indicates Glowzone lost business because the Drop Slide was not functioning. There appears to be no evidence of documented complaints, or customers asking for refunds or discounts because the Drop Slide was out of commission. While summary judgment will be denied overall, these issues may be renewed in a motion in limine prior to trial.